(Nos. 82-CC-0434, 82-CC-0435 cons.—

HENRY D. MOORE, JR., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1984.*

THOMAS J. EDSTROM, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E.

WEBBER, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

This matter is before the Court on the joint stipulation of the parties. The Court finds as follows.

This is an arbitration case which was processed under terms of a collective bargaining agreement between the State of Illinois and the American Federation of State, County and Municipal Employees. The grievance was filed on behalf of Chaplain Henry D. Moore, Jr., an Episcopalian priest who was assigned to the Menard Correctional Center in Menard, Illinois. The problem arose as a result of an inmate confiding in Chaplain Moore about a pending prison escape attempt and the chaplain's failure to properly inform his supervisors of the knowledge that had been imparted to him by the unnamed inmate. As a result of the chaplain's failure to report this impending escape, two inmates broke out of the Menard State Penitentiary. They were suspected of assaulting two citizens and of killing a liquor store owner near St. Louis not long after their escape. Upon investigation of the events surrounding the escape, prison officials learned from the unnamed inmate that he had known of the escape plans and had shared his knowledge with Chaplain Moore. Following the disclosure of Chaplain Moore's knowledge by the unnamed inmate, the events are described in the arbitration hearing record as follows:

"At the suggestion of Senior Chaplain Hoger, Chaplain Moore, who was ill with bronchitis, decided on Thursday, January 17, to take a few days sick

leave. But about 8:30 or 9:00 p.m. on Thursday, Hoger called the Grievant at home and asked him to attend a meeting at 11:00 a.m. on Friday, January 18, in the office of Assistant Warden Chrans. At this meeting was Robert Horn, Chief of Chaplains who had arrived from Springfield, Illinois, as well as Moore, Hoger and Chrans.

During the meeting the Grievant was told that the Warden was very upset about the developments surrounding the escape. At some point in the forty-five minute meeting (described as being a very emotional one), there was a discussion of the probability of a disciplinary hearing (with the potential outcome being discharge of the Grievant) or as an alternative option, resignation. If Chaplain Moore resigned, there were assurances of assistance in relocating him at another State correctional center.

Reverend Moore elected to resign and the personnel papers were completed within a few minutes. The resignation was effective immediately. Reverend Moore was asked to clean out his desk and remove his personal items the next day (Saturday), which he did.

There was no Union involvement prior to the following week. The grievance was dated January 30."

At the hearing, counsel for the parties agreed that the issue should be framed as follows:

"Whether the Employer violated Article IX, Sections 4 or 5, of the Agreement when Rev. Henry D. Moore, Jr. was separated from employment with the Department of Corrections on January 18, 1980, and during the course of events which led to such separation."

The grievance read:

"The Union has just become aware that Rev. Moore was forced to sign a resignation. This resignation was not processed like other resignations and at the time Rev. Moore was not allowed Union representation. Union demands Rev. Moore be reinstated in his last position as Chaplain, resignation be withdrawn and he lose no time in above matter and he be made whole."

The grievance was granted by the arbitrator on July 31, 1981.

The joint stipulation of the parties raises only the mitigation. During the period of Rev. Moore's separation from State service he would have earned a gross salary of $27,453.64. During the period of his separation he was able to mitigate his losses to the extent of $19,649.68. He also received during this period of time $1,751.00 by way of unemployment compensation. We have reviewed the

record and find that the Claimant met his responsibilities with respect to mitigation of his losses.

It is therefore ordered that this Claimant be granted an award in the amount of $7,803.96 subject to appropriate additions for F.I.C.A. and/or any appropriate retirement program as well as appropriate deductions and withholding for F.I.C.A. and/or any appropriate retirement program as well as State and Federal taxes, with the Office of Employment Security, unemployment division, to receive $1,751.00 from Claimant's net reimbursement for unemployment payments made to this Claimant, all as more fully set forth in the appendix attached hereto and made a part hereof.

## APPENDIX A

### Identification of State Contributions and Deductions from Back Salary Award

To the State Employees' Retirement System:

| | |
|---|---|
| Employee's contribution to State Employees' Retirement System | 1098.15 |
| Employee's contribution to FICA | 1738.20 |
| State's contribution to State Employees' Retirement System | 2099.63 |
| State's contribution to FICA | 1738.20 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---|
| Claimant's Federal Income Tax | 1560.79 |

To Illinois Department:

| | |
|---|---|
| Claimant's Illinois Income Tax | 234.12 |

To Office of Employment Security:
Director Dept. of Labor 1751.00

To the Claimant:
Net Salary 1422.00

Total award $11642.09